A91A0319. RANDALL v. TIMBERLAKE ASSOCIATES, INC.
(405 SE2d 564)

BIRDSONG, Presiding Judge.

E. G. Randall appeals from the grant of summary judgment to Timberlake Associates, Inc. ("Timberlake") in a suit on a note.

The record shows that Preferred Image, Inc. ("Preferred") borrowed $8,000 from Timberlake, and the debt was secured by a note signed by Randall as the authorized agent for Preferred. Randall also signed a UCC Form 1 Financing Statement which showed that the debtors were "Preferred Image and E. G. Randall"; and Randall's signature on the form did not indicate whether her signature was as the corporation's representative or in her individual capacity. The financing statement, however, does not reflect that Randall's personal guaranty was given for the loan.

When the debt was not paid, Timberlake sued Preferred on the note and Randall on the personal guaranty which Timberlake alleged was created by the UCC Form 1. Later, Timberlake also asserted that recovery from Randall personally was warranted because she had commingled her assets with the corporation's and because Randall had personally guaranteed the debt in a letter. Subsequently, the trial court granted summary judgment to Timberlake against both Randall and Preferred. Preferred did not file a notice of appeal and is not a party to this appeal.

Randall alleges that the trial court erred by granting summary judgment against her in her individual capacity because the trial court improperly struck and refused to consider her untimely response to Timberlake's motion and because the judgment against her

was not warranted by the evidence. She contends that judgment was authorized only against Preferred Image, Inc. *Held*:

1. Relying on *Wyse v. Potamkin Chrysler-Plymouth*, 189 Ga. App. 64, 65 (374 SE2d 785) and *Walton v. Datry*, 185 Ga. App. 88, 93 (363 SE2d 295), Randall contends the trial court should have considered her response to Timberlake's motion for summary judgment even though it was not filed in accordance with Rule 6.2 of the Uniform Rules for the Superior Courts. Although initially this argument appears to have merit, closer examination of the precedents on this issue shows that trial courts may not refuse to consider *affidavits* which were untimely under Rule 6.2, but which were timely under the applicable sections of the Civil Practice Act, e.g., OCGA §§ 9-11-6 (d) and 9-11-56 (c) and (e). In this appeal, however, it appears Randall did not attempt to file an affidavit because the evidence she relied on in opposing the motion was already on file with the court. Instead, she sought only to file a response to the motion and the statements required by Rule 6.5. As the Civil Practice Act does not specifically authorize filing of these pleadings, there is no conflict with Rule 6.2, and we cannot say the trial court erred by refusing to consider Randall's response to the motion. Nevertheless, it is difficult to comprehend any benefit to be gained by granting on August 3, 1990, a motion to strike, filed on February 21, 1990, the response, filed on February 19, 1990, to a motion for summary judgment filed on December 27, 1989.

2. Regarding the merits of the grant of summary judgment, Timberlake's motion asserted that it was entitled to recover from Randall because she personally guaranteed the debt in the UCC Form 1, she acknowledged her responsibility for the debt in a letter after the default on the note, and she commingled her personal funds with Preferred's corporate funds. The trial court, however, granted summary judgment finding that Randall's letter, written on June 27, 1986, "removes all genuine issues of material fact as to whether defendant Randall personally guaranteed repayment of the debt."

This letter, however, does not create or confirm Randall's enforceable personal guaranty because the letter is on Preferred's letterhead and is signed by Randall as "President." Further, Randall's statement, "I am giving my personal guarantee that the loan will be paid in full," is not enforceable as a personal guaranty for the note since there was no consideration: The loan was then in default, and Timberlake specifically rejected the offers contained in Randall's letter.

Further, a financing statement (UCC Form 1) is not sufficient to create a personal guaranty. There were no words of guaranty on the financing statement (see OCGA § 11-3-416), and a financing statement constitutes notice of a security interest; it does not create the

interest. See OCGA § 11-9-105 (1); *Kubota Tractor Corp. v. C & S Nat. Bank*, 198 Ga. App. 830 (403 SE2d 218).

Additionally, review of the portions of Randall's deposition Timberlake relied upon to authorize the piercing of Preferred's corporate veil shows that they are not sufficient to authorize a grant of summary judgment against Randall personally. " 'The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party "has over extended his privilege in the use of a corporate entity in order to defeat justice, perpet(r)ate fraud or . . . evade contractual or tort responsibility." ' " *Cheney v. Moore*, 193 Ga. App. 312-313 (387 SE2d 575). This evidence Timberlake relies upon can be construed to show that Randall received funds from the corporation or used corporate funds to pay credit card bills for what she claims were corporate expenses, and not that Randall abused the corporate privilege. Since Randall is entitled to receive the benefit of all doubts and to have the evidence construed in her favor (*Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843)), this evidence was not sufficient to authorize the grant of summary judgment.

*Judgment reversed. Pope and Cooper, JJ., concur.*

DECIDED APRIL 18, 1991.

*Gary Bross & Associates, Gary W. Bross, Lorraine R. Silvo*, for appellant.

*Louis E. Bridges*, for appellee.

